# IN THE UNITED STATES DISTRICT COURT FOR THE

# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LEON GREENHAW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-04-623-T |
| | ) |
| IGNITION SYSTEMS & CONTROLS, L.P., | ) |
| | ) |
| Defendant. | ) |

## ORDER

On April 21, 2005, Defendant filed the "Motion for Summary Judgment of Defendant Ignition Systems & Controls, L.P. and Brief in Support" seeking the entry of judgment in its favor, pursuant to Fed.R.Civ.P. 56, on Plaintiff's claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.A. §623, *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. §12101, *et seq.*, and Oklahoma's Anti-Discrimination Act, 25 O.S. §1101, *et seq.* On May 9, 2005, "Plaintiff's Response to Defendant's Summary Judgment Motion" was filed. Finally, on May 31, 2005, "Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment" was filed. The matter is at issue.

**A.      Standard of Review**:

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. English v. Colorado Dep't of Corr., 248 F.3d 1002, 1007 (10th Cir.2001) (quoting Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir.1999)).

Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1216 (10th Cir. 2002). Plaintiff may not simply rest on his pleadings to resist Defendant's request for summary judgment.

> As the moving parties, defendants shoulder the "initial burden to show that there is an absence of evidence to support the nonmoving party's case." Thomas v. IBM, 48 F.3d 478, 484 (10th Cir.1995) (internal quotation marks and citation omitted). If defendants meet this burden, it falls to plaintiff to "identify specific facts that show the existence of a genuine issue of material fact." Id. "The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." Id. (internal quotation marks and citation omitted).

Clinger v. New Mexico Highlands University, 215 F.3d 1162, 1165 (10th Cir. 2000). "Unsupported conclusory allegations thus do not create a genuine issue of fact. See United States v. Simons, 129 F.3d 1386, 1388-89 (10th Cir.1997) (citing Allen v. Muskogee, Okla., 119 F.3d 837, 843-44 (10th Cir.1997))." In re Grandote Country Club Company, Ltd., 252 F.3d 1146, 1149-50 (10th Cir. 2001).

**B.     Undisputed, Material Facts**:

Plaintiff was hired by Defendant[1] as a shop technician on March 5, 2001. He was 56 years old at the time he was hired. Plaintiff worked in Defendant's Oklahoma City branch office. When he began working as a shop technician, Plaintiff worked with Mike Abney, another shop technician, who was also 56 years old. During the interview process, Plaintiff had inquired about an open Field Service Technician ("FST") position. However, Mr. Scasney told Plaintiff that the FST position "was for a younger man."

At the time he was hired, Plaintiff received a copy of Defendant's Employee Manual. Defendant's Employee Manual contains an "Equal Employment Opportunity Policy" which prohibits discrimination

---

[1] Plaintiff was hired by Marty Scasney, Defendant's Oklahoma City branch manager. Mr. Scasney was 59 at the time he hired Plaintiff. Danny Reza, manager of Defendant's service division, participated to some unspecified degree in the screening of applicants for the service technician position. Mr. Reza was 32 at the time Plaintiff was hired.

based on age and disability. Defendant's policy entitled "Sexual or Other Harassment" prohibits harassment based on age. The policies describe how an employee should report violations and state that an employee should not fear reprisal.

Six months after Plaintiff was hired, Mr. Scasney was replaced as the Oklahoma City branch manager by Freddy Alvarado.[2] A year after Mr. Alvarado became branch manager, Plaintiff filled out a Career Advancement Form, seeking a FST position. Plaintiff was not given the FST position. Jeff Pickle, who was then 37, was hired for the position. At the time he was hired, Mr. Pickle had fifteen years experience in the natural gas industry working with natural gas compressors. At the time he was denied the FST position, Plaintiff was told by Mr. Reza, in front of other employees, that he was too old and not in good enough health and physical condition to perform the FST job.

Approximately nine months later, on June 12, 2003, Plaintiff was diagnosed with severe uncontrolled hypertension.[3] Plaintiff was taken off work on June 12-14, 2003, in order to attempt to get his blood pressure under control. During that period of time, he took a variety of medications and saw his health care providers several times. Following that time period, Plaintiff returned to work and provided Defendant with a note which verified his absence and explained that he had been "seen and treated for severely elevated blood pressure and associated headache." Plaintiff's medication was modified again on July 3, 2003. He sought further medical treatment on at least three other occasions.[4] Plaintiff claims to

---

[2] Mr. Alvarado was 36 at the time he became branch manager.

[3] When Plaintiff initially sought treatment, one of his complaints was that he had been suffering from a headache for two days.

[4] The dates of treatment are partially obscured or entirely obliterated on the copies of the documents provided by Plaintiff. (Plaintiff's Response, Exhibit 16.)

have provided documentation regarding these visits to Defendant, although Mr. Reza recalls receiving information regarding only the original treatment. At no time between the time Plaintiff's return to work on June 16, 2003, and the date on which his shop technician position was eliminated did Plaintiff request accommodation from Defendant or otherwise seek alteration of his job duties.

In August, 2003, Defendant decided to eliminate one of the two shop technician positions in the Oklahoma City branch office. At that time, the shop technician positions were filled by Plaintiff (age 57) and Jerry Harris (age 30). Plaintiff had been employed by Defendant for more than two years while Mr. Harris had been employed by Defendant for one year.

Mr. Alvarado and Mr. Reza decided to eliminate Plaintiff's service technician position. Plaintiff was notified that his service technician position would be eliminated on August 15, 2003. Plaintiff was told that the elimination of the position was based on a slowdown in the workload and a decline in revenues.

At the same time as he was notified that his shop technician position was being eliminated, Mr. Alvarado offered Plaintiff a FST position.[5] The FST position was the one for which Plaintiff had applied in September of 2002. During the summer months, an individual employed as a FST could be required to work in "extreme heat." On Monday, August 18, 2003, Plaintiff went out in the field with Mr. Reza as a FST trainee. Plaintiff took a vacation day on August 19, 2003. On August 20, 2003, Plaintiff called his treating physician seeking information regarding the effect the "extreme heat" could have on him as a result of his hypertension.[6] While the medical records do not indicate that Plaintiff spoke with a physician at that

---

[5] The FST position became available when Mr. Pickle resigned on August 12, 2003.

[6] Plaintiff's medical records clearly contain a notation regarding Plaintiff's call. However, the records state that the medical assistant with whom Plaintiff spoke, instructed Plaintiff to make an appointment, bring in a job description and speak with the physician. In contrast, Plaintiff testified that he

time, Plaintiff testified that he was told by his physician that he should not take the FST position because of his hypertension. As a result, Plaintiff declined to accept the FST position and his employment with Defendant ended on August 20, 2003. Plaintiff is eligible for rehire by Defendant.

Plaintiff continues to take medication for his hypertension. At the present time, his hypertension is controlled with the medication. Plaintiff's hypertension does not prevent him from performing his present job, a mechanic with Oklahoma Roofing & Sheet metal; a job which is "more physical" than his shop technician position.

**C.    Defendant's Motion for Summary Judgment**:

Defendant's motion for summary judgment is divided into six subsections. Each subsection, to the extent it is not rendered moot by the Court's ruling on a prior subsection, shall be discussed separately. Defendant also attempts, in its reply brief, to seek summary judgment on three other claims. Those claims will also be separately addressed to the extent not rendered moot by a prior ruling.

        1.    <u>ADEA Claim Barred by the Statute of Limitations</u>:

In its first proposition, Defendant argues that Plaintiff's allegations of age discrimination arising from the denial of the FST position in September/October of 2002 are time barred as Plaintiff failed to timely file a charge of discrimination with the EEOC.[7] (Defendant's Motion at 10-11.) Although Plaintiff does not directly respond to this argument, Plaintiff states in unequivocal language that his ADEA claim is based on the elimination of his shop technician position in August of 2003. Plaintiff further argues that it is

---

actually spoke to a physician.

[7] In his May 18, 2004, Complaint, Plaintiff set forth factual allegations regarding Defendant's failure to give him the FST position in October of 2002. (<u>See</u> Complaint (Doc. No. 1), ¶ 8.) Those allegations were repeated by Plaintiff in the parties' September 30, 2004, Joint Status Report. (Doc. No. 16, p. 3.)

permissible for him to introduce evidence of Defendant's prior discriminatory acts – not as separate claims – but as background evidence to support a timely claim. (Plaintiff's Response at 13, citing National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 102 (2002).)

Although Plaintiff disavows a present intent to pursue an ADEA claim relating to the September/October, 2002, denial of the FST position, such allegations were clearly set forth in his Complaint and the parties' Joint Status Report. Accordingly, as Plaintiff has apparently conceded the fact that he did not timely file a charge of discrimination with the EEOC, Defendant is entitled to have judgment entered in its favor on Plaintiff's ADEA claim relating to the denial of the FST position in September/October of 2002.[8]

### 2.  Plaintiff Was Not Discharged for Purposes of the ADEA:

In its second proposition, Defendant argues that Plaintiff cannot establish a *prima facie* case of age discrimination because Plaintiff cannot establish that he was discharged.[9] (Defendant's Motion at 12-13.)

---

[8] This ruling should not be construed as evidencing in any way the Court's position on the question of whether Plaintiff can introduce this evidence as background evidence. Morgan, 536 U.S. at 102.

[9] According to the Tenth Circuit Court of Appeals, a *prima facie* case of age discrimination involves proof of four elements:
> "(1) the affected employee was within the protected age group; (2) [he] was doing satisfactory work; (3) [he] was discharged despite the adequacy of this work; and (4) a younger person replaced [him.]" [E.E.O.C. v.] Sperry Corp., 852 F.2d [503,] 507 [(10th Cir. 1988)]; Cooper v. Asplundh Tree Expert Co., 836 F.2d at 1547; Cockrell v. Boise Cascade Co., 781 F.2d 173, 177 (10th Cir.1986).
>> "In reduction-in-force cases . . . courts have modified the fourth *prima facie* element by requiring the plaintiff to 'produc[e] evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.' . . . This element may be established through circumstantial evidence that the plaintiff was treated less favorably than younger employees during the reduction-in-force."

Specifically, although Defendant admits that it eliminated Plaintiff's shop technician position, it claims there was no discharge or adverse action because Plaintiff was offered the FST position immediately upon the elimination of his shop technician position. (Defendant's Motion at 12.) In response, Plaintiff focuses on Defendant's decision to eliminate Plaintiff's shop technician position while retaining Mr. Harris' shop technician position.[10] Plaintiff argues that the elimination of his shop technician position, despite the offer of another position, constitutes an "adverse action" for purposes of the ADEA. (Plaintiff's Response at 13-15.) In its reply, Defendant argues that the elimination of Plaintiff's position was not an "adverse action" but rather a mere alteration of job responsibilities because he was offered another job "at the same pay and with the same benefits." (Defendant's Reply at 3.)

According to the Tenth Circuit Court of Appeals, an "adverse employment action" is "liberally defined." Stinnett v. Safeway, Inc., 337 F.3d 1213, 1217 (10th Cir. 2003).

> "Such actions are not simply limited to monetary losses in the form of wages or benefits. Instead, we take a case-by-case approach, examining the unique factors relevant to the situation at hand." Id. (citation omitted). Conduct rises to the level of "adverse employment action" when it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Id. (quoting Burlington Indust., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)); see also Hooks v. Diamond Crystal Specialty Foods, Inc., 997 F.2d 793, 799 (10th Cir.1993) (noting that a reassignment may be an adverse employment action when the employee "receives less pay, has less responsibility, or is required to utilize a lesser degree of skill than his previous assignment"), overruled on other

> Branson v. Price River Coal Co., 853 F.2d 768 (10th Cir.1988) (quoting Williams v. General Motors Corp., 656 F.2d 120, 129 (5th Cir. Unit B 1981), cert. denied, 455 U.S. 943 (1982)); see Oxman v. WLS-TV, 846 F.2d 448, 453-54 (7th Cir.1988); Thornbrough v. Columbus and Greenville R.R., 760 F.2d 633, 642 (5th Cir.1985).

Lucas v. Dover Corp., 857 F.2d 1397, 1400-01 (10th Cir. 1988) (parallel citation omitted).

[10] As noted elsewhere herein, it is undisputed that Mr. Harris is a person younger than 40.

> grounds by Buchanan v. Sherrill, 51 F.3d 227, 229 (10th Cir.1995). Actions presenting nothing beyond a "mere inconvenience or alteration of responsibilities," however, do not constitute adverse employment action. Sanchez [v. Denver Public Schools], 164 F.3d [527,] 532 [(10th Cir. 1998)] (characterizing the reassignment of a fourth-grade teacher to work as a second-grade teacher at another school as a "purely lateral transfer," and rejecting the teacher's argument that this constitutes an adverse employment action merely because her commute-time increased and no other teachers volunteered for the transfer).

Id. (parallel citations omitted).

While neither Plaintiff's nor Defendant's evidence on this issue is conclusive, the Court is unable to conclude as a matter of law that Plaintiff cannot satisfy his burden of proof at trial. For example, the parties seem to agree that the physical conditions under which the FST position would be performed may be significantly different, at least in the summer months, from the physical conditions under which the shop technician position was performed. The two positions require, at least in part, different skills. Moreover, Plaintiff has offered evidence demonstrating that the FST position he was offered differed from other FST positions as he was to be paid less per hour and was not going to receive the same benefits as other people employed in FST positions. Accordingly, the Court finds, for purposes of Defendant's summary judgment motion, there is a question of fact whether Plaintiff suffered an adverse employment action.

        3.        <u>Defendant's Nondiscriminatory Reason for Eliminating Plaintiff's Job</u>:

In its third proposition, Defendant argues that it is entitled to summary judgment on Plaintiff's ADEA claim because it has offered a facially nondiscriminatory reason for eliminating Plaintiff's shop technician position. Specifically, Defendant cites the decline in the "revenues in the shop at the Oklahoma City branch office" and Mr. Alvarado's and Mr. Reza's "extensive analysis" of Mr. Harris' and Plaintiff's "experience and job skills." (Defendant's Motion at 13-17.) In response, Plaintiff cites numerous instances of "age-biased comments" as well as the prior denial of a transfer allegedly based on Plaintiff's age which,

8

according to Plaintiff, demonstrates pretext. (Plaintiff's Response at 16-18.) Plaintiff also argues that Defendant's failure to produce certain evidence (spoliation of evidence) gives rise to an inference that the information contained in the missing document was adverse to Defendant. (Plaintiff's Response at 18-19.) In addition, Plaintiff argues Defendant's use of subjective criteria in determining which position to eliminate creates an inference of discrimination. Plaintiff further suggests that Defendant's position regarding the reason for the elimination of Plaintiff's shop technician position has changed over time and such "inconsistency supports an inference of discrimination." Finally, Plaintiff argues that the fact that all employees hired to work in a FST position or a shop technician position since Mr. Alvarado became the branch manager were under the age of 40 suggests age discrimination.[11]

Again, upon review of the parties' arguments and the evidence submitted in support thereof and drawing all reasonable inferences in Plaintiff's favor, the Court is unable to conclude that Defendant is entitled to summary judgment on Plaintiff's ADEA claim. Plaintiff has submitted sufficient evidence from which a jury may conclude that Defendant's proffered reason for the employment decision was pretext for age discrimination. Accordingly, the Court concludes Defendant is not entitled to summary judgment on Plaintiff's ADEA claim.

    4.    <u>Plaintiff's Hypertension as a Disability Under the ADA</u>:

---

[11] Mr. Alvarado hired Jeffery Garrett (age 39), Ryan Robison (age 25), Jeremy Scheihing (age 27) and Jeff Pickle (age 37).

In its fourth proposition, Defendant argues that Plaintiff was not disabled under the ADA[12] because of his hypertension. Specifically, Defendant argues that Plaintiff's hypertension or high blood pressure[13] did not substantially limit one or more of his major life functions.[14]

In response, Plaintiff first argues that the Court must consider whether Plaintiff was disabled at the time the employment decision was made. (Plaintiff's Response at 24-25, citing Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 563 (7th Cir. 1996).) Plaintiff thereafter states the fact-driven inquiry for determining whether an impairment substantially limits a major life function.[15] While not discussing any of

---

[12] In order to prove a disability under the ADA, Plaintiff must demonstrate he has an impairment that substantially limits one or more of his major life activities. Doebele v. Sprint/United Management Co., 342 F.3d 1117, 1129 (10th Cir. 2003).

[13] It is undisputed for purposes of this motion that Plaintiff's hypertension satisfies the requirement that he identify an "impairment."

[14] Plaintiff identified "eating, sleeping and concentrating" as the major life functions limited by his hypertension. As "concentrating" has been rejected as a major life function, Doebele, 342 F.3d at 1129-30, the Court will not consider the parties' arguments relating thereto.

[15]

> In making this determination we consider three factors: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact or the expected permanent or long term impact of or resulting from the impairment." [Pack v. K-Mart Corp., 166 F.3d 1300, 1305 (10th Cir. 1999).] We also take into consideration "any mitigating or corrective measures utilized by the individual, such as medications." Id. at 1305-06. Thus to establish that [he] was substantially limited in the major life activities [he] identified, [Plaintiff] was required to show, under the factors set out above, either that [he] was unable to perform these activities or was significantly restricted in [his] ability to perform them when compared to the average person in the general population.

Id. at 1130.

10

the evidence in the case, Plaintiff simply claims this inquiry is always a jury question. (Plaintiff's Response at 24.)

The Court has reviewed the record evidence relating to Plaintiff's hypertension. That evidence reveals that Plaintiff suffered from a headache, related to his hypertension, for two days preceding his first visit to the doctor on June 12, 2003. (Plaintiff's Response at 4 ("Response to No. 18.) Although Plaintiff's blood pressure medication was adjusted at times thereafter, Plaintiff does not discuss how the hypertension affected his ability to sleep or eat.[16] Accordingly, while the severity of the impact of a impairment on a major life function is normally considered a jury question, in this case Plaintiff has wholly failed to offer the Court any evidence which would justify submitting the question to the jury. Therefore, the Court finds that Defendant is entitled to summary judgment on Plaintiff's claim that he was disabled under §12102(2)(A).

     5.    <u>A Record of Having a Disability</u>:

In Plaintiff's response to Defendant's motion for summary judgment, Plaintiff noted that Defendant did not move for summary judgment on the claim that Plaintiff was disabled under the ADA because he had a record of a disability.[17] (Plaintiff's Response at 24-25.) Plaintiff claims, however, that he met the definition of disabled under §12102(2)(B) "as shown by the medical records" attached to his response

---

[16] In his brief, Plaintiff simply refers to his Complaint for the allegations that his high blood pressure "causes him to be limited in his ability to concentrate, sleep and eat. <u>See, e.g.</u> Plaintiff's Response at 3 ("Response to No. 11), 4 ("Response to No. 16)

[17] In order to be disabled under the §12102(2)(B) definition of disability, Plaintiff must demonstrate that he actually had an impairment that substantially limited one or more of his major life activities. <u>Sorensen v. Univ. of Utah Hospital</u>, 194 F.3d 1084, 1087 (10th Cir. 1999) (<u>citing</u> <u>Hilburn v. Murata Electronics North America, Inc.</u>, 181 F.3d 1220, 1229 (11th Cir. 1999)).

brief. (Plaintiff's Response at 25.) Defendant briefly addressed this issue in its reply brief. There, Defendant argued that Plaintiff did not have a record of a disability. (Defendant's Reply at 10.)

Upon review of the matter, the Court concludes that Defendant is entitled to summary judgment on Plaintiff's §12102(2)(B) claim of disability as Plaintiff has failed to set forth any evidence demonstrating that Plaintiff "actually had an impairment that substantially limited one or more of his major life activities." Specifically, while Plaintiff has demonstrated that he had an impairment, he has offered the Court no evidence tending to describe how the impairment "substantially limited" his ability to sleep and eat.

### 6. Defendant's Supervisors Regarded Him as Disabled:

In Plaintiff's Response to Defendant's motion for summary judgment, Plaintiff noted that Defendant did not move for summary judgment on the claim that Plaintiff was disabled under the ADA because Defendant regarded him as disabled.[18] (Plaintiff's Response at 24.) In support thereof, Plaintiff cites Mr. Reza's statement in September or October of 2002 that Plaintiff was "too old and not in good enough health and physical condition to perform the FST job." In response, Defendant argues that this one comment, allegedly made ten months prior to the employment decisions at issue in this case, does not suffice to demonstrate that Plaintiff was "regarded as" disabled by Mr. Reza or Mr. Alvarado. (Defendant's Reply at 10.)

---

[18] In order to be disabled under the §12102(2)(C) definition of disability, Plaintiff must demonstrate that
> "(1) a covered entity mistakenly believes that [he] has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that [his] actual, nonlimiting impairment substantially limits one or more major life activities." Sutton v. United Airlines, Inc., 527 U.S. 471, ---- - ----, 119 S.Ct. 2139, 2149-50, 144 L.Ed.2d 450 (1999).

Sorensen, 194 F.3d at 1088.

12

In this case, the Court finds this issue is resolved by reference to the entire definition of disabled under §12102(2)(C). Under that definition, Plaintiff must be "regarded as" having an impairment that substantially limits a major life function. Lanman v. Johnson County, Kansas, 393 F.3d 1151, 1157 (10th Cir. 2004). In this case, the only evidence offered by Plaintiff to suggest Defendant regarded him as disabled relates to Plaintiff's major life function of work (i.e., Mr. Reza's statement that Plaintiff was too unhealthy to be a FST). However, Plaintiff does not offer the Court any evidence tending to demonstrate that Defendant was "'unable to perform either a class of jobs or a broad range of jobs in various classes.' Doebele, 342 F.3d at 1133." Id.

Accordingly, the Court concludes that there is no material question regarding whether Plaintiff was disabled under §12102(2)(C). Thus, Defendant is entitled to summary judgment on Plaintiff's ADA claims.

### 7. Plaintiff's Hypertension as a Reason for his Termination:

In its fifth proposition, Defendant argues that Plaintiff has no evidence tending to link his termination to his impairment. (Defendant's Motion at 22-24.) However, the Court concludes it is unnecessary to discuss this issue as Plaintiff has failed to demonstrate that he was disabled.

### 8. The ADA's Interactive Process:

In the final argument relating to Plaintiff's ADA claims, Plaintiff asserts that Defendant is not entitled to summary judgment on his ADA claims because Defendant failed to engage in the interactive process. (Plaintiff's Response at 25.) Defendant responds that it had no duty to engage in the ADA's interactive process because Plaintiff was required to, but did not, initiate the process.[19] (Defendant's Reply at 10.)

---

[19] To the extent Defendant's claim is fact based, the court reject it. It appears undisputed that Plaintiff asked if the FST position could be altered or modified to avoid the summer's extreme heat.

The Tenth Circuit Court of Appeals stated in Smith v. Midland Brake, Inc., 180 F.3d 1154, 1172 n. 9 (10th Cir. 1999), that the employer must participate in the interactive process after the employer has knowledge of the employee's "physical or mental limitations resulting from the disability." In this case, the Court has concluded that Plaintiff has failed to demonstrate he had a "disability." Accordingly, the Court concludes that Defendant had no obligation to participate in the ADA's interactive process.

        9.        Plaintiff's Claims under the Oklahoma Anti-Discrimination Act:

In its sixth proposition, Defendant argues that Plaintiff's claim of handicap discrimination under the Oklahoma Anti-Discrimination Act must fail. Specifically, Defendant argues that Plaintiff's claim of handicap discrimination under Oklahoma law fails for the same reasons his disability discrimination claim under the ADA failed. In support thereof, Defendant cites the unpublished opinion of Anthony v. City of Clinton, 185 F.3d 873, 1999 WL 390927 (10th Cir. 1999). In his response, Plaintiff mentions his handicap discrimination claim in one heading, but he does not offer specific argument in support of his request that the Court deny Defendant's motion for summary judgment on his state law claim. (Plaintiff's Response at 23.)

In Anthony, the Tenth Circuit Court of Appeals appears to assume that the definition of handicap under the Oklahoma Anti-Discrimination Act would be the same as or similar to the ADA's definition of disability. In that case, the Circuit Court concluded that because the employee had failed to establish a claim under the ADA, his handicap discrimination claim under Oklahoma law would also fail. Id. See also Barzellone v. City of Tulsa, 210 F.3d 389, 2000 WL 339213 at *5 n.6 (10th Cir. 2000) (same). As Plaintiff did not offer any legal argument demonstrating that his claim of handicap discrimination should be evaluated differently than his claim of disability discrimination, the Court concludes Defendant is, for the

reasons previously stated, entitled to summary judgment on Plaintiff's handicap discrimination claim under the Oklahoma Anti-Discrimination Act.

## CONCLUSION

For the foregoing reasons and as more fully set forth herein, the "Motion for Summary Judgment of Defendant Ignition Systems & Controls, L.P." is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED this  8th  day of June, 2005.

_____
RALPH G. THOMPSON
UNITED STATES DISTRICT JUDGE